UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

PETER ALFRED PEREZ,

                Plaintiff,

v.

M. KECALOVIC et al.,

                Defendants.

_____/

Case No. 1:23-cv-444

Honorable Sally J. Berens

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a prior Order, the Court granted Plaintiff leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S.

344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c)(1). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does

2

not contain a consent from the defendants[; h]owever, because they had not been served, they were

not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal

law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted,

or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2),

1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see*

*Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they

are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying

these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against

Defendant Bandt. The Court will also dismiss, for failure to state a claim, the following claims

against remaining Defendants Kecalovic, Waber, and Killough: First Amendment retaliation

claims and all Fourteenth Amendment due process claims *except* Plaintiff's claim that Defendant

Waber failed to hold a hearing for the mail rejection. Plaintiff's First Amendment claims against

Defendants Kecalovic, Waber, and Killough regarding the rejection of his magazine, and his

Fourteenth Amendment due process claim against Defendant Waber regarding the failure to hold

a hearing for the rejection will remain in the case. Plaintiff's motion for the appointment of counsel

(ECF No. 15) will be denied.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis*., 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

**Discussion**

I.      **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. The events about which he complains, however, occurred at the Richard A. Handlon Correctional Facility (MTU) in Ionia, Ionia County, Michigan. Plaintiff sues Correctional Facilities Administration (CFA) employee Unknown Killough and the following MTU officials: Mailroom staff member M. Kecalovic, Prison Counselor Unknown Waber, and Residential Unit Manager C. Bandt. (Compl., ECF No. 1, PageID.2.)

In Plaintiff's complaint, he alleges that his mail was improperly rejected. Specifically, Plaintiff states that his family gave him a subscription to "Autabuy" magazine for Christmas in 2022.[2] (*Id.*, PageID.3.) Plaintiff received his first magazine in March of 2023; however, the following month, Plaintiff was told that he "could no longer get them." (*Id.*) Despite being told that he could not receive the magazine in April, Plaintiff was permitted to receive the May edition of the magazine. (*Id.*)

When the magazine was rejected, Defendant Kecalovic sent Plaintiff "a mailroom rejection for it." (*Id.*) Plaintiff asserts that the relevant MDOC mail policy permits family members to order magazines for inmates "provided [the magazines] come directly from the publisher" and the content of the magazine does "not pose a risk to other prisoners or staff" and "it is not about drugs or criminal activity or nud[ity]." (*Id.*) Plaintiff alleges that Autabuy magazine meets the criteria for permitted mail. (*See id.*) As an example of other magazines that inmates are permitted to

---

[2] In this opinion, the Court corrects the capitalization in quotations from Plaintiff's complaint.

receive, Plaintiff states that inmates are permitted to receive the TV Guide magazine even though "it is not a[n] approved vendor." (*Id.*)

Plaintiff alleges that Defendant Waber "said she had a hearing on [the mail rejection]," "but all she did was put a hearing paper under [Plaintiff's] door."[3] (*Id.*) Plaintiff states that he only went to Defendant Waber's office "after she put [the] paper under [his] door." (*Id.*) Further, Plaintiff alleges that Defendant Bandt responded to his step I grievance, stating that Bandt had shown Plaintiff an email from Defendant Killough in Lansing "who said we cannot have [the magazine]." (*Id.*) Plaintiff claims that Defendant Bandt did not actually show him an email from Defendant Killough. (*Id.*)

Plaintiff attached a copy of the step II grievance response to his complaint. (ECF No. 1-1, PageID.11.) In the step II grievance response, Warden Yokom (not a party) summarized Defendant Bandt's step I grievance response as follows: "The step 1 respondent reported that prisoners are only allowed to have catalogs that are MDOC authorized Vendors. Per CFA Killough, since the Autabuy catalog has items listed for sale, and it is not an authorized Vendor prisoners are not allowed to receive it." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his First Amendment right to the free flow of mail and his due process rights under the Fourteenth Amendment. (Compl., ECF No. 1, PageID.3.) Plaintiff also states that he is "worr[ied] about the retaliation that will come from this because that's what they do here at MTU." (*Id.*) As relief,

---

[3] Plaintiff attached a copy of a document titled, "Administrative Hearing Report," which was signed by Defendant Waber, to his complaint. (ECF No. 1-1, PageID.8.) The document includes a portion that is labeled as the "prisoner's statement," which states: "Prisoner states that he has received this magazine in the past up until this month and he doesn't understand why it is rejected." (*Id.*)

Plaintiff wants the MDOC "to pay for [his] subscription [that] they took," and he "want[s] [his] subscription back." (*Id.*, PageID.4.)

## II.      Motion for the Appointment of Counsel

Plaintiff recently filed a motion for the appointment of counsel. (ECF No. 15.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and has determined that, at this time, the assistance of counsel is not necessary to the proper presentation of Plaintiff's position. Plaintiff's request for the appointment of counsel (ECF No. 15) therefore will be denied.

## III.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Defendant Bandt

Plaintiff's only allegation against Defendant Bandt is that Bandt responded to Plaintiff's step I grievance. In Defendant Bandt's response, Plaintiff alleges that Bandt stated that Bandt had shown Plaintiff an email from Defendant Killough in Lansing "who said we cannot have [the magazine]"; however, Plaintiff claims that Defendant Bandt did not actually show him an email from Defendant Killough. (Compl., ECF No. 1, PageID.3.)

7

As an initial matter, Plaintiff has no due process right to file a prison grievance. The courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Thus, although it is clear that Plaintiff disagreed with Defendant Bandt's response to his grievance, because Plaintiff has no liberty interest in the grievance process—including the responses to grievances—Defendant Bandt's conduct did not deprive Plaintiff of due process.

Further, the Sixth Circuit has held that where the defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," the defendant cannot be liable under Section 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). The reason is that there must be active unconstitutional behavior. Failing to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior by a person who merely denies an administrative grievance. *Id.* Additionally, in unpublished decisions, the Sixth Circuit has held that a prisoner's allegation that a defendant improperly denied, or responded to, a grievance is not a claim of constitutional dimension because there is "no inherent constitutional right to an effective prison grievance procedure." *See Overholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000); *Lyle v. Stahl*, No. 97-2007, 1998 WL 476189, at *1 (6th Cir. Aug. 3, 1998);

*see also Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at \*1 (6th Cir. Mar. 28, 1994) (discussing

that there is no constitutional right to a grievance procedure). In light of the foregoing authority,

Plaintiff's claim against Defendant Bandt regarding Bandt's response to Plaintiff's grievance fails

to state a claim.

Accordingly, Plaintiff's claims against Defendant Bandt will be dismissed.

**B.       Defendants Kecalovic, Waber, and Killough**

**1.       First Amendment Retaliation Claims**

In his complaint, Plaintiff states that he is "worr[ied] about the retaliation that will come

from *this* because that's what they do here at MTU." (Compl., ECF No. 1, PageID.3 (emphasis

added).) Plaintiff does not identify what "this" is; however, it appears that Plaintiff is referring to

his filing of this suit, his internal complaints regarding his inability to receive the magazine in

question, or both. Regardless, the Court construes Plaintiff's statement to raise a First Amendment

retaliation claim.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the

Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to

set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was

engaged in protected conduct; (2) an adverse action was taken against him that would deter a

person of ordinary firmness from engaging in that conduct; and (3) the adverse action was

motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show

that the exercise of the protected right was a substantial or motivating factor in the defendant's

alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing

*Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Here, to the extent that Plaintiff seeks to bring a retaliation claim regarding the rejection of

his magazine, Plaintiff's retaliation claim fails at the first step because he fails to allege any facts

showing that he engaged in protected conduct prior to Defendants' rejection of his magazine. Instead, Defendants rejected Plaintiff's magazine *prior to* Plaintiff complaining about the rejection and filing this suit.

Moreover, although Plaintiff states that he fears some unspecified *potential*, future retaliation (which has not yet occurred), Plaintiff does not allege that any adverse action has in fact occurred after he complained about the rejection and filed this suit. Plaintiff's allegations of retaliation are entirely conclusory, and such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under Section 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive Section 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Accordingly, for these reasons, Plaintiff's First Amendment retaliation claims will be dismissed.

### 2.     First Amendment Claim Regarding Rejection of Plaintiff's Magazine

Plaintiff alleges that Defendants Kecalovic, Waber, and Killough violated his First Amendment right to the free flow of mail. (Compl., ECF No. 1, PageID.3.)

"A prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati*

10

*v. Discovery Network, Inc.*, 507 U.S. 410, 427 (1993)). A prisoner, however, retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections systems." *Martin v. Kelley,* 803 F.2d 236, 240 n.7 (6th Cir. 1986) (*quoting Pell*, 417 U.S. at 822); *see Turner v. Safley,* 482 U.S. 78 (1987). Incoming mail has long been recognized to pose a greater threat to prison order and security than outgoing mail. *Thornburgh v. Abbott*, 490 U.S. 401 (1989).

To determine whether prison restrictions on mail, including books, magazines, and letters, are reasonably related to a legitimate penological interest, the Court must assess the restriction by reference to the following factors: (1) whether there exists a valid, rational connection between the prison regulation and the legitimate governmental interest; (2) whether there remain alternative means of exercising the right; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests. *Turner*, 482 U.S. at 89–90.

Here, Plaintiff alleges that his family gave him a subscription to "Autabuy" magazine for Christmas in 2022. (Compl., ECF No. 1, PageID.3.) Plaintiff received his first magazine in March of 2023; however, the following month, Plaintiff was told that he "could no longer get them." (*Id.*) Despite being told that he could not receive the magazine in April, Plaintiff was permitted to receive the May edition of the magazine. (*Id.*) When the magazine was rejected, Defendant Kecalovic sent Plaintiff "a mailroom rejection for it." (*Id.*) Plaintiff asserts that the relevant MDOC mail policy permits family members to order magazines for inmates "provided [the magazines] come directly from the publisher" and the content of the magazine does "not pose a risk to other prisoners or staff" and "it is not about drugs or criminal activity or nud[ity]." (*Id.*) Plaintiff alleges

11

that Autabuy magazine meets the criteria for permitted mail. (*See id.*) Further, Plaintiff alleges that Defendant Waber "said she had a hearing on [the mail rejection]," "but all she did was put a hearing paper under [Plaintiff's] door." (*Id.*) Plaintiff filed a grievance about the rejection, and in the step II grievance response, non-party Warden Yokom stated that "[p]er CFA Killough, since the Autabuy catalog has items listed for sale, and it is not an authorized Vendor prisoners are not allowed to receive it." (ECF No. 1-1, PageID.11.)

At this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him. Here, Plaintiff's allegations suggest that Defendants Kecalovic, Waber, and Killough each had some involvement in the alleged improper rejection of his magazine. Although Plaintiff has by no means proven his claim, on initial review, the Court will not dismiss Plaintiff's First Amendment claim against Defendants Kecalovic, Waber, and Killough regarding the rejection of his magazine.

### 3.   Fourteenth Amendment Due Process Claims

#### a.   Failure to Hold a Hearing Regarding the Mail Rejection

The Court construes Plaintiff's complaint to raise a Fourteenth Amendment due process claim against Defendant Waber regarding the failure to hold a hearing for the rejection of his magazine.

Plaintiff has a liberty interest in receiving his mail. *See Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010) (citing *Procunier v. Martinez*, 416 U.S. 396, 428 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989)). The Sixth Circuit has held that an incoming mail censorship regulation must provide "that notice of rejection be given to the inmate-recipient" and that the inmate-recipient be given the opportunity to challenge the rejection. *Martin v. Kelley*, 803 F.2d 236, 243–44 (6th Cir. 1986). The regulation "must provide for an appeal of the rejection decision to an impartial third party." *Id.* at 244. Although it is not entirely clear

12

from Plaintiff's complaint, Plaintiff's allegations suggest that Defendant Waber did not hold a

hearing where Plaintiff was present and able to challenge the mail rejection. (*See* Compl., ECF

No. 1, PageID.3.) Plaintiff attached an administrative hearing report for the mail rejection to his

complaint, which was signed by Defendant Waber (ECF No. 1-1, PageID.8); however, the factual

allegations in the complaint suggest that Defendant Waber did not actually hold a hearing on the

matter or permit Plaintiff to present facts on his own behalf to challenge the rejection. (*See* Compl.,

ECF No. 1, PageID.3.) Under these circumstances, taking Plaintiff's factual allegations as true and

in the light most favorable to him, on initial review, the Court will not dismiss Plaintiff's

Fourteenth Amendment due process claim against Defendant Waber regarding Waber's failure to

hold a hearing for the mail rejection.

### b.        Deprivation of Property

To the extent Plaintiff claims that by rejecting the magazine, Defendants deprived him of

property without due process of law, this claim is barred by the doctrine of *Parratt v. Taylor*, 451

U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of

a state employee cannot maintain a federal due process claim unless the state fails to afford an

adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation,

while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent

and intentional deprivations of property, as long as the deprivation was not pursuant to an

established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must

plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57

F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth

Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his

Section 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate. Plaintiff has available to him numerous state post-deprivation remedies. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MDOC Policy Directive 04.07.112, ¶ B (eff. Apr. 26, 2021); MDOC Policy Directive 04.02.110, ¶ E (eff. Nov. 1, 2017). Moreover, aggrieved prisoners may submit claims for property loss of less than $1,000.00 to the State Administrative Board. Mich. Comp. Laws. § 600.6419; MDOC Policy Directive 03.02.131 (eff. Mar. 27, 2017). Finally, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state or any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff fails to allege any reasons why a state-court action would not afford him complete relief for the deprivations, either negligent or intentional, of his personal property.

Accordingly, Plaintiff fails to state a Fourteenth Amendment due process claim regarding the deprivation of his property.

## Conclusion

For the reasons set forth above, Plaintiff's motion for the appointment of counsel (ECF No. 15) will be denied. Further, having conducted the review required by the PLRA, the Court determines that Defendant Bandt will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Kecalovic, Waber, and Killough: First Amendment retaliation claims and all Fourteenth Amendment due process claims *except* Plaintiff's claim that Defendant Waber failed to hold a hearing for the mail rejection. Plaintiff's First Amendment claims against Defendants Kecalovic, Waber, and Killough regarding the

14

rejection of his magazine, and his Fourteenth Amendment due process claim against Defendant

Waber regarding the failure to hold a hearing for the rejection remain in the case.

      An order consistent with this opinion will be entered.


Dated:   June 10, 2024                                    /s/ Sally J. Berens                                    
                                                        SALLY J. BERENS
                                                         United States Magistrate Judge